Lawrence P. NICASTRO, Plaintiff,

v.

Marvin T. RUNYON, Postmaster General, United States Postal Service, Defendant.

No. 98 Civ. 0386(CM).

United States District Court, S.D. New York.

July 29, 1999.

Michael Howard Sussman, Law Offices of Michael H. Sussman, Goshen, NY, for Lawrence P. Nicastro, plaintiff.

Rachel D. Godsil, U.S. Attorney S.D.N.Y., Mary Jo White, New York City, for Marvin T. Runyon, defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT

McMAHON, District Judge.

Defendant has moved for summary judgment, pursuant to Fed.R.Civ.P. 56(b) in this employment discrimination and retaliation case. The standard for granting summary judgment is almost too well-known to be reiterated. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Such a motion serves "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation. *See Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). With this in mind, I turn to the motion made by the Postmaster General in this case. As I must, I view all the evidence most favorably to the non-movant, plaintiff.

Plaintiff alleges that he was originally discriminated against in February 1994 on the basis of his race (white) and nationality (Italian). He cannot presently recall what caused him to file his original EEOC claim and he testified at his deposition that he never perceived his supervisors, Napolean Williams and Vincent Ciancio, to be discriminating against him for his ethnicity or his race. Rather, he stated under oath that he thought he was being harassed at work by the Postmaster (Williams) and by his supervisor (Ciancio) because he had reported Ciancio to the Postal Inspectors in 1991. Whatever the basis for his complaint, plaintiff acknowledges that it was conciliated and resolved by Enid Samuels, an EEO investigator, in July of the same year.

In October 1994, plaintiff again sought EEO counseling, because he believed that he was being discriminated against in retaliation for his prior EEO activity. He withdrew this complaint, but filed another in December 1994, claiming that he was subject to unusual supervision and repeated outbursts of temper by Williams, Ciancio and Glen Smith, another supervisor, as well as being given a "hard time" when he sought overtime assistance. Nicastro observed that the supervisors behaved differently toward other employees who made the same or similar requests. Nicastro also contended that he had received an unusual number of letters of warning during this period.

In April 1995, while lifting mail, plaintiff injured his right shoulder, receiving a diagnosis of bicipital tendinitis. After his injury, Nicastro contends that he returned to full duty. However, in November 1995, he suffered a recurrence of the injury and was placed on a 25 pound weight restriction. Thereafter, due to chronic pain, Nicastro's weight restriction was adjusted to 20 pounds, then 10 and finally 5 pounds in the fall of 1997. Plaintiff claims that he was required to bring in doctor's notes more often than other postal service employees who were injured, which he again attributes to his prior EEO activity. He also contends that Smith gave him a hard time about his injury and his requests for street assistance due to same, and claims that, when Nicastro documented their exchange, Smith said, "Put that in your little book and tell the EEO. I don't fuckin' care."

In April 1997, plaintiff bid for City Route # 1, a posted vacancy. He was the senior person who bid for the slot. Plaintiff claims that, while his weight restriction was 20 pounds at the time of the bid, thus placing him "technically" on limited duty, he was already "carrying" City Route # 1 and had been for some months at the behest of his various supervisors. Plaintiff found ways to reduce the weight of the satchel by breaking up the relay, and occasionally by asking a customer to come into the station to pick up a heavier package. Nicastro claimed that his weight restriction did not interfere with his ability to carry the mail, and the new postmaster at Wappingers Falls, Quinn, confirmed that he saw plaintiff carrying the route and made no negative comment about his performance. He does not dispute, however, that the job description for a route postal carrier included the ability to carry 70 pounds of mail; indeed, he so testified at his deposition.

On the last day of the bid period, in a deviation from past practice, Quinn demanded that plaintiff produce a doctor's note certifying that he could carry 70 pounds. Nicastro told Quinn that his doctor was away, but Quinn would not extend the bid period. Plaintiff did submit a let-

ter from his doctor, belatedly, but it did not certify that he would be able to lift 70 pounds within six months of the bid date; indeed, the most it said was that a successful recovery was expected and that the doctor hoped Nicastro would be able to lift 35 pounds. Nicastro did not get the post.

Plaintiff filed a complaint after he was denied the bid, claiming that he was refused the position because of his prior EEO activity. Shortly thereafter, Nicastro received a letter of warning because he was not wearing the postal uniform hat. Quinn admits that others were out of uniform and did not receive written warnings. After a union grievance, the postal service modified the letter from a warning to an official discussion.

In June 1997, plaintiff had surgery on his right shoulder. He received another letter of warning concerning his time off, which was again modified downward after a union grievance.

After his surgery, plaintiff remained subject to the 20 pound restriction. Nonetheless, in September 1997, he was reassigned to the "collection run." Defendant contends that Nicastro was assigned to this run in order to accommodate his weight restriction; plaintiff claims that he never asked for any accommodation but said the assignment actually aggravated his injury. When he complained after two days, he was taken off the assignment.

Eventually, plaintiff was reassigned to the post office at Hudson, in order to accommodate his medical restriction, which by this point was 5 pounds.

Plaintiff contends that this entire series of events was retaliation for his filing of the EEO complaints in 1994. Having never filed a timely charge with the EEOC, plaintiff has made no complaint of racial or ethnic origin discrimination in violation of Title VII; he complains only of retaliatory treatment.

The Government moves for summary judgment on several grounds, including, *inter alia,* plaintiff's alleged failure to demonstrate that he had a good faith basis for filing his initial complaints of racial and ethnic origin discrimination, plaintiff's inability to fulfill the basic requirements of the job opportunity he was seeking, and the lack of temporal proximity between the EEO filings in 1994 and the events of 1997.

The Court rules as follows:

■ The burden of establishing that an act of retaliation was committed rests with the plaintiff. As part of satisfying that burden, Nicastro must establish that he had a good faith basis to believe that he was being discriminated against when he filed his initial EEO complaint in 1994. *See Reed v. A.W. Lawrence, Co., Inc.,* 95 F.3d 1170 (2d Cir.1996); *see also Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988). This is because Title VII only offers redress for retaliation that is directed to activity protected by that statute.

■ Here, the only evidence presented by plaintiff to bolster his contention that he had the requisite good faith belief is the fact that his original claim was conciliated. However, that, without more, does not raise a question of fact concerning plaintiff's good faith belief that he has a viable claim of the sort of discrimination barred by Title VII. As the Government points out, the role of an EEO counselor is to try to resolve complaints in an informal manner, not to determine whether there is some basis for the complaint. *See* 29 C.F.R. § 1614.105(a). Indeed, the counselor is not empowered to conduct any sort of investigation—only to try to broker a resolution. *See* 29 C.F.R. § 1614.108(a). Thus, the inference Nicastro would have the Court draw—that conciliation fairly implies a viable claim—is simply not warranted.

■ There is considerable evidence, however, that plaintiff did *not* have the requisite good faith belief when he filed his initial EEO complaint. Thus, plaintiff testified under oath that he could not remem-

ber what incident or incidents triggered the filing of his initial complaint. He further testified that he had no basis for believing that Ciancio and Williams—his supervisors at the relevant time—were discriminating against him due to his ethnicity or his race. Rather, he stated at his deposition that he believed he was being discriminated against because he had called the Postal Inspectors to look into his allegations that Ciancio was throwing out mail. *See* Deposition of Lawrence P. Nicastro, attached as Exh. A to Declaration of Rachel D. Godsil, at 57:4–6, 105:15–18. Assuming *arguendo* that plaintiff was targeted by Ciancio and Williams for calling the Postal Inspectors, the resulting retaliation would not violate Title VII because it is not based on plaintiff's opposition to any practice made unlawful by Title VII—*i.e.*, discrimination based on race, color, religion, sex or national origin. Reporting a supervisor's violation of work rules is laudable, but it is not protected activity under Title VII. Similarly, to the extent that plaintiff alleges that he was complaining about some sort of disability discrimination, not only does he offer no factual basis for making such a claim, but also Title VII does not cover claims of disability discrimination. *See Rivera v. Heyman*, 982 F.Supp. 932, 939 (S.D.N.Y.1997), *aff'd in part and rev'd in part*, 157 F.3d 101 (2d Cir.1998).

Thus, plaintiff has not raised a genuine issue of material fact concerning his good faith belief that the allegedly retaliatory activities were undertaken in response to Title VII-protected activity. That alone warrants granting the Postmaster General's motion for summary judgment.

■ Second, plaintiff's claim that he was denied the City Route # 1 in retaliation for protected activity fails because this failure to win the route was far too remote in time from the filing of his three EEO complaints in 1994 to support an inference of retaliation. Plaintiff was denied the route in 1997. Claims of retaliation are routinely dismissed when as few as three months

elapse between the protected EEO activity and the alleged act of retaliation. *See, e.g., Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84–85 (2d Cir.1990); *Ponticelli v. Zurich American Ins. Group*, 16 F.Supp.2d 414, 435 (S.D.N.Y.1998); *Zenni v. Hard Rock Cafe Int'l Inc.*, 903 F.Supp. 644, 656 (S.D.N.Y.1995). Surely, two-and-one-half years is far too long to warrant an inference of discriminatory retaliation.

■ The same reasoning compels dismissal of Nicastro's claims that the following actions were taken in retaliation for his 1994 EEO complaints: alleged threat of termination in November 1995 (almost one year after last EEO complaint); alleged threat of termination in 1996 (over one year after last EEO complaint); two letters of warning issued in 1997 (over two years after last EEO complaint); work assignment that allegedly violated his weight restriction in 1997 (almost three years after his last EEO letter). As for allegedly being required to document sick leaves and other absences, plaintiff has not raised any issue of fact because he failed to put in any evidence of when these acts allegedly occurred.

■ Third, plaintiff has not established that he was qualified for the job he was denied. Plaintiff was admittedly under a weight restriction at the time he put in his bid—the job requirement was that plaintiff be able to lift 70 pounds, and he was unable to do so. Plaintiff's physician could not certify that plaintiff would ever be able to meet that requirement; he merely observed that he hoped plaintiff could lift 35 pounds after a full recovery. Plaintiff contends that, prior to his surgery, he was carrying that very route, and was able to work out an accommodation for himself by making more trips back to the receptacle and requiring some customers to pick up packages at the post office. However, this does not support an inference that plaintiff's supervisors were acting in any retaliatory way by insisting that he be able to

meet the job requirements before giving him the position on a permanent basis.[1]

■ Fourth, many of the actions complained of by plaintiff, such as scrutiny from his supervisors that he deemed excessive, requiring documentation for sick leave, scrutiny of his wife's sick leave, the unexplained absence of certain documents that he thinks should be in his employment file, or threatening to investigate medical fraud, do not constitute "adverse employment actions" and so cannot be the basis of any claim of Title VII retaliation. *See Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994); *Bernheim v. Litt,* 79 F.3d 318, 327 (2d Cir.1996) (Jacobs, J., concurring); *Mishk v. Destefano,* 5 F.Supp.2d 194, 202 (S.D.N.Y.1998); *Boylan v. Arruda,* 42 F.Supp.2d 352 (S.D.N.Y.1999).

■ Finally, as noted in the Postmaster General's brief, this Court lacks jurisdiction over any claim concerning Nicastro's worker's compensation. Judicial review of administrative decisions denying claims for work-related compensation is expressly precluded under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 8116(c), 8128(b). Plaintiff cannot get around this rule by collaterally attacking a denial of FECA benefits as retaliatory.

The Postmaster General's motion for summary judgment is granted, and the complaint is dismissed, with prejudice. The Clerk is directed to enter judgment accordingly.

---

1. The record evidence demonstrates that plaintiff's hope of being able to lift even 35 pounds was a vain one; he is presently able to lift only 5 pounds, after being subject to several interim post-surgery weight restrictions of 20, 15, and 10 pounds. While this information was obviously not before plaintiff's super-visors when they denied him the route, it does support an inference that they were not acting irrationally when they made that decision in the face of a doctor's letter that merely held out the hope that plaintiff might be able to do half of what was required.