Frances E. WEEKS, Plaintiff–
Appellant,

v.

NEW YORK STATE (DIVISION OF
PAROLE) & Patrick Hoy,
Defendants–Appellees.

Docket No. 00–0211.

United States Court of Appeals,
Second Circuit.

Argued May 21, 2001.

Decided Oct. 31, 2001.

80

Gregory R. Preston, Preston & Wilkins, New York, NY, for Plaintiff–Appellant.

Susan H. Odessky, Assistant Attorney General, Attorney General's Office of the State of New York, New York, N.Y. (Eliot Spitzer, Attorney General of the State of New York, and Mark Gimpel, Deputy Solicitor General, on the brief), for Defendants–Appellees.

Before: WALKER, Chief Judge, JACOBS, Circuit Judge, and LARIMER, Chief District Judge.*

JACOBS, Circuit Judge:

Plaintiff-appellant Frances E. Weeks, an African American woman, alleged that her former employer, defendant-appellee New York State Division of Parole ("DOP"), and a DOP supervisor, Patrick Hoy, subjected her to (1) discrimination based on her race and sex, including a hostile work environment, (2) retaliation for filing an internal complaint with the DOP and a charge with the EEOC, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, as amended by the Civil Rights Act of 1991 ("Title VII"), and 42 U.S.C. §§ 1981 & 1983, and (3) negligent and intentional infliction of emotional distress.

Before trial, the district court dismissed as untimely the Title VII claims that arose from events pre-dating the 300–day period before she filed her EEOC charge, and dismissed all but one of the timely Title

---

* The Honorable David G. Larimer, Chief Judge of the United States District Court for the Western District of New York, sitting by designation.

VII claims on the ground that the harms alleged did not amount to tangible "adverse employment actions." The only claims that survived motion practice—that Weeks experienced a hostile work environment because of her race and Weeks' state law claims against DOP—went to trial on June 5, 2000, and the jury returned a verdict for the DOP.

On appeal, Weeks principally challenges: (1) the district court's pre-trial dismissal of claims under Rule 12(b)(6); (2) the court's denial of her pre-trial motion to supplement the complaint with allegations concerning her March 2000 termination; and (3) the court's refusal to consider (as untimely) a challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the prosecution's peremptory challenges of four black women.

We affirm.

# I

Weeks was employed by the State of New York from 1967 until March 2000; she had worked as a Parole Officer with the DOP since 1990. In August 1992, Weeks was transferred from the DOP's Brooklyn field office to the DOP's Queensboro Work Release Facility, where Weeks claims that harassment and disparate treatment began.

Weeks filed an employment discrimination charge with the EEOC on June 17, 1997, alleging that the BOP subjected her to (1) discrimination based on her race and sex, including a hostile work environment, and (2) retaliation for filing an internal complaint with the DOP and a prior charge with the EEOC. After receiving a

Right to Sue letter from the EEOC, Weeks timely filed a complaint in federal court, raising the same allegations that she had presented to the agency. On April 22, 1998, Weeks filed an amended complaint to incorporate allegations of illegal acts post-dating her original filing.

On or about June 29, 1998, the DOP moved to dismiss Weeks' amended complaint. Ruling on the DOP's motion to dismiss, the court (in relevant part): (1) dismissed as untimely all of the Title VII claims that arose from events pre-dating the 300–day period before Weeks filed her EEOC charge, and (2) dismissed most of the timely Title VII claims on the ground that the harms she allegedly suffered did not amount to tangible "adverse employment actions." Also dismissed were claims brought against defendant Hoy under sections 1981 and 1983 (and state law claims for negligent and intentional infliction of emotional distress), but Weeks does not appeal from the dismissal of these claims.[1] The only claim that survived for trial by jury were the claims that Weeks experienced a hostile work environment because of her race and Weeks' state law claims against DOP for negligent and intentional infliction of emotional distress. (The complaint pleaded sexual harassment, but her counsel's opening statement specified that she was harassed because of her race, and no one contests that change of tack.)

In March 2000, three months before trial, the DOP terminated Weeks. Weeks moved to supplement her complaint to allege discrimination and retaliation in connection with the termination. The district court denied the motion on June 2, 2000.

---

**1.** Hoy is still technically an appellee in this case, but he faces no liability because individuals are not proper Title VII defendants. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir.1995) (abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

Weeks went to trial on her remaining claims on June 5, 2000. The jury returned a verdict for the DOP.

## II

### A. Continuing Violation Allegations

■ Weeks concedes that many of her claims were based on acts alleged to have occurred more than 300 days before she filed her EEOC complaint, but argues that they are preserved by the continuing violation exception to the statute of limitations, and that the district court therefore erred in granting the Rule 12(b)(6) motion to dismiss them. We review the dismissal *de novo*, but we must affirm if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim[s] which would entitle [her] to relief.'" *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

■ Title VII permits recovery in cases such as this only for discriminatory conduct that occurred within 300 days of the plaintiff's filing of a complaint with the EEOC. *See* 42 U.S.C. § 2000e–5(e)(1); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir.1996). The "continuing violation exception" to that limitation provides that if a plaintiff "files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination," the statute of limitations is extended "for all claims of discriminatory acts committed under that policy." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997); *see Harris v. City of New York*, 186 F.3d 243, 248–50 (2d Cir.1999).

■ To invoke the doctrine, a plaintiff must show either (1) "specific ongoing discriminatory policies or practices," or (2) "specific and related instances of discrimi-

nation [that] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir.1998) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994)); *see also Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993) ("[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.").

■ Weeks fails to allege any "specific ongoing discriminatory policies or practices" in either the "Factual Allegations" section of her amended complaint or in the description of her Title VII "Cause[s] of Action." In describing her "Cause[s] of Action" under 42 U.S.C. §§ 1981 and 1983—claims not at issue on appeal—she does allege that she was discriminated against pursuant to a DOP "custom and policy" of discrimination; but even if we were to consider this "custom and policy" in the context of the Title VII claims, such a conclusory allegation is wholly insufficient.

Weeks argues that writing down the words "custom and policy" in a complaint is sufficient to invoke the continuing violations exception, and stave off dismissal of otherwise untimely claims. She relies on the following highlighted clause from *Lightfoot*: "Although *the mere allegation of the existence of [a discriminatory] policy would be sufficient to withstand a challenge for failure to state a claim*, something more is required to avoid summary judgment on the issue." 110 F.3d at 907 (emphasis added). The argument misreads the *Lightfoot* dicta. The distinction drawn is between the mere allegation of a discriminatory policy and the evidence of it; *Lightfoot* does not suggest that the discriminatory policy may be left unspecified or generic. The law is clear that the

continuing violation exception applies only where there are "specific" or "identifiable" discriminatory customs or practices, or specific and related acts that are tantamount to such customs or policies. Examples include "discriminatory seniority lists" and "discriminatory employment tests." *Lambert*, 10 F.3d at 53; *see also Lightfoot*, 110 F.3d at 907. So, what must be alleged to withstand dismissal on the pleadings, or supported by evidence to withstand summary judgment, is a discriminatory policy or practice, not the undertaking to come up with one:

> a simple declaration that defendant's conduct violated the ultimate legal standard at issue (e.g., it was 'because of sex' or 'severe or pervasive') does not suffice. But it is enough to assert facts from

which, construing the complaint liberally and in the plaintiff's favor, one could infer such a violation.

*Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir.2001).

Weeks contends that her allegations "amount to" a charge of a discriminatory policy because the discriminatory incidents she alleges continued for an extended period despite complaints she made to her employer's Affirmative Action Office ("AAO"). *See Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir.2001); *Quinn*, 159 F.3d at 765–66. Set forth in the margin are the allegations dismissed as untimely (¶¶ 13–19 of the amended complaint, as well as ¶ 20, which cites conduct of unspecified date).[2] The events pleaded,

2. 13. In or about August 1992, Officer Weeks was

transferred to the Queensboro Work Release Facility or the Division.

14. In or about November 1992, Defendant Patrick Hoy and Senior Parole Officer Garfield Zeitler ("SPO Zeitler") began what would be five years of ongoing and continuous harassment and disparate treatment of Officer Weeks. The acts of disparate treatment and harassment include but are not limited to the following:

i. Despite the policy of Defendant to Hoy to accommodate, based on seniority, parole officers['] request for caseload assignments in particular areas, and Officer Weeks['] request, Defendant Hoy refused to assign Officer Weeks a Brooklyn caseload.

ii. Officer Weeks received a counseling memo, dated November 19, 1992, despite only returning from sick leave on November 2, 1992. SPO Zeitler, at the direction of Defendant Hoy, issued the counseling memo, which indicated that Officer Weeks ha[d] not handed in time sheets, during the time she was on sick leave.

iii. On November 19, 1992, SPO Zeitler issued a memo to Officer Weeks which outlined a restricted work schedule for Officer Weeks. She was directed to report to work from 8:30 to 4:30 p.m. On November 23, 1992, SPO Zeitler directed

that Officer Weeks work fourteen (14) hours without overtime pay.

iv. In or about December 1992, Officer Weeks received a counseling memo from Defendant Hoy.

v. In or about December 1992, SPO Zeitler returned all of Officer Weeks['] day sheets because he purportedly could not understand her handwriting. This was subsequent to Officer Weeks reporting her restricted work schedule to her union representative.

vi. Similarly situated non-minority employees were not given the same counseling memos by SPO Zeitler and Defendant Hoy.

vii. SPO Zeitler also refused to provide Officer Weeks with an access code to the computer despite several requests.

vii. Defendant Hoy assigned a desk to a nonminority employee with less seniority than Officer Weeks.

ix. Defendant Hoy and Regional Director Rick Levy had Officer Weeks transferred to another office in violation of the labor management agreement.

x. Senior Parole Officer Deluca th[e]n issued Officer Weeks a counseling memo, dated February 10, 1993, stating that Officer Weeks['] day sheets did not reflect identification numbers of inmates nor addresses of visits made. Upon information and belief, there were non-minority, non-female similarly situated employees that

though embroidered with adjectives and adverbial phrases, are few and unlinked; they are "not continuous in time with one another or with the timely acts that she has alleged." *Quinn*, 159 F.3d at 766. Significantly, the complaint dates no discriminatory incident within the three-year period between February 1993 and June 1996, *see Amended Complaint* ¶¶ 14(x) 19. At best, the gap is narrowed to a two-year period if one counts a June 1994 incident in which Weeks was given a "6 Month Recertification." *Id.* ¶ 18. Absent unusual circumstances, a two-year gap is a discontinuity that defeats use of the continuing violation exception. *See Quinn*, 159 F.3d at 766 (citing *Selan v. Kiley*, 969 F.2d 560, 566–67 (7th Cir.1992)).

Even if the alleged discriminatory incidents were continuous and related, Weeks cannot overcome the statute of limitations because her employer did not "permit[ ]" the violations "to continue *unremedied* for so long" that their repetition "amount[ed] to a discriminatory policy or practice." *Quinn*, 159 F.3d at 766 (emphasis added).

The complaint effectively concedes that the DOP took remedial action on the (untimely) incidents through internal channels, to the extent Weeks reported them. The complaint does allege that she reported a problem to the AAO (misconduct by her supervisor, defendant Patrick Hoy,

and others); but the same passage acknowledges that remedial action was taken. *See Amended Complaint* ¶¶ 15–17. Other parts of the complaint are unhelpful in terms of a possible continuing violation, but even if they can be read as alleging a second report to the AAO (drawing all reasonable inferences in favor of Weeks), it is clear that remedial action was taken on that occasion as well (by the transfer of her supervisor), *see id.* ¶¶ 19–20.

In sum, the complaint identifies no discriminatory policy of the DOP, and alleges no toleration of incidents that would be tantamount to such a policy.

## B. Adverse Employment Action

After the dismissal of many claims as untimely, the claims remaining were those that undertook to plead disparate treatment or retaliation. The district court dismissed all but one of those remaining claims, under Rule 12(b)(6), on the ground that Weeks failed to allege an adverse employment action. Again, we review the dismissal *de novo*, and must affirm if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claims which would entitle [her] to relief." *Tarshis*, 211 F.3d at 35 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

were not disciplined for not following this procedure.

xi. Defendant Hoy assaulted Officer Weeks and upon information and belief, had her followed by members of the Division.

15. Officer Weeks reported the above disparate treatment and harassment to the Office of Affirmative Action of the Division of Parole.

16. After an investigation by the Affirmative Action Office, it was determined that Officer Weeks was subject to disparate treatment by Defendant Hoy, SPO Zeitler, SPO Deluca, Director Levy and Director DiClerico.

17. Despite being transferred, the harassment and disparate treatment of Officer Weeks continued.

18. In June 1994, Defendant Hoy delivered to Officer Weeks what he termed a "6 Month Recertification", which was nothing more than a guise to give Officer Weeks a negative review. Upon information and belief, non-minority, non-female employees were not given "6 Month Recertifications."

19. In June 1996, Defendant Hoy was then transferred by the Division to again supervise Officer Weeks. Within one month of his transfer, Defendant Hoy again had taken disciplinary action against Officer Weeks.

20. Officer Weeks filed a grievance and Defendant Hoy was again transferred.

An adverse employment action is a requisite of a claim alleging disparate treatment or retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Gregory*, 243 F.3d at 695. An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) (internal quotation marks omitted). To be " 'materially adverse,' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation marks omitted). Such a change "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Id.* (internal quotation marks omitted) (alterations in original).

Weeks' timely allegations appear in ¶¶ 20–23 of the complaint, and are set out in the margin.[3] The district court ruled that none of the acts alleged in this part of the complaint amounted to an adverse employment action. The effect of this ruling was to deny recovery on the basis of any of the separate harms allegedly suffered by Weeks as a result of her race or sex; to recover, she was required to prove at trial that the harms collectively created a work environment that was pervasively hostile

---

3. 20. Officer Weeks filed a grievance and Defendant Hoy was again transferred.

21. The transfer of Officer Weeks, however, did not end the harassment, continued disparate treatment and retaliation for filing a grievance alleging disparate treatment. The continued disparate treatment, included but is not limited to the following:
 i. Area Supervisor James Barling issued a notice of discipline to Officer Weeks for misconduct and incompetence for failing to have her handcuffs and weapon despite not personally determining that Officer Weeks had her gun and handcuffs.
 ii. Transferring Officer Weeks['] cases to other officers.
 iii. Issuing Officer Weeks a counseling memo for her procedure for taking a parolee into custody.
 iv. Upon information and belief, there were other non-minority and non-female parole officers who were not given discipline or counseling memos under similar circumstances.

22. In or about May 1997, Defendant Hoy continued to harass[ ] Office Weeks. Defendant Hoy appeared at the pistol range on the same day that Officer Weeks was at the range, despite Defendant Hoy not being scheduled to be on the range with his unit.

23. The filing of the instant complaint did not end the harassment [and] continued disparate treatment of Officer Weeks, and retaliation. The continued disparate treatment and retaliation, included but is not limited to the following:
 i. On or about April 17, 1998, Officer Weeks was physically removed from the Queens Field Office.
 ii. Officer Weeks['] files were seized and she was barred from the Queens Field Office.
 iii. Officer Weeks was directed not to contact any of her parolees. Upon information and belief, Officer Weeks['] parolees were then interviewed.
 iv. Officer Weeks was then transferred to the Metro II. Regional Office at 350 Livingston Street. Officer Weeks was not advised as to the reason for the transfer or ejectment from the Queens Field Office. Accordingly, Officer Weeks was not given an opportunity to challenge the adverse employment actions.
 v. Officer Weeks was advised[ ] that she was the target of an investigation. Upon information and belief, Officer Weeks believes that the review of her files and interview of her parolees in retaliation for the filing of this Complaint is designed to bring about her termination.
 vi. Upon information and belief, non-minority and non-female parole officers have not been barred from field offices, stripped of their supervision of parolees and transferred under similar circumstances.

or abusive. *See Fitzgerald*, 251 F.3d at 356. We have recognized that a plaintiff proceeding under a hostile work environment theory need not establish that her employer has taken "tangible employment action ... [that] itself constitutes a change in the terms and conditions of employment." *Gregory*, 243 F.3d at 691 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)) (alterations in original). For that reason, Weeks' hostile work environment claim survived to trial.

Taking as true all factual allegations, and viewing the dismissed claims in a light most favorable to Weeks, none of the acts described in ¶¶ 19–23 of the complaint constitutes an adverse employment action, as a matter of law. We address each act separately:

### a. Weeks' Filing of a "Grievance" and Hoy's Transfer

Assuming that the (undated) allegation contained in ¶ 20 is timely, it does not rise to the level of an adverse employment action. It alleges that the DOP responded positively to one of Weeks' complaints and contains no allegation of harm to Weeks.

### b. Issuance of "Notice of Discipline" and a "Counseling Memo"

In ¶ 21(i), Weeks alleges that she received a "notice of discipline [ ] for misconduct and incompetence for failing to have her handcuffs and weapon," and that non-minority, non-female officers did not receive such a notice under similar circumstances.

Weeks, however, alleges no facts from which one could infer that the "notice of discipline" created a materially adverse change in her working conditions. She does not describe its effect or ramifications, how or why the effect would be serious, whether it went into any file, or even whether it was in writing. It hardly needs saying that a criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action. *See Smart v. Ball State Univ.*, 89 F.3d 437, 442–43 (7th Cir. 1996) (plaintiff's negative job evaluations alone do not establish an adverse employment action for purposes of retaliation prima facie case).

For similar reasons, Weeks' allegation in ¶ 21(iii)—that she received a "counseling memo for her procedure for taking a parolee into custody"—is insufficient.

### c. Transfer of Weeks' Cases; Seizure of Files; Removal from Office

The complaint in ¶¶ 21(ii) and 23 alleges a variety of incidents relating to the shifting of Weeks' responsibilities. She alleges that she was transferred from the Queens Field Office to the Metro II Regional Office at 350 Livingston Street. *See Amended Complaint* ¶ 23. There is no allegation that the reassignment constituted a demotion or otherwise. *See Galabya*, 202 F.3d at 641 (citing *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996)). For all the amended complaint reveals, her new post at the Regional Office was advantageous. Similarly, Weeks' allegation that her cases were transferred to other officers is insufficient. *See Amended Complaint* ¶ 21(ii); *see also Galabya*, 202 F.3d at 640 ("[M]aterially adverse means a change in working conditions [that is] 'more disruptive than a mere ... alteration of job responsibilities.' "). It is unremarkable that work left behind following a transfer is assigned to someone else.

Weeks alleges that she was "physically removed" from the Field Office. *See*

*Amended Complaint* ¶ 23(i). An action that is not adverse to begin with does not become adverse because the employee resists it and the employer meets the resistance. But even assuming that the physical removal was unprovoked by Weeks, the allegation still fails because Weeks does not allege what tangible adverse effect this incident had on the terms and conditions of her employment. *Cf. Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997) (feeling "frightened" or "intimidated" is irrelevant if there is no "materially adverse change in the terms and conditions of employment").

Finally, Weeks alleges that after the transfer, her files at the Queens Field Office were seized and reviewed and that the parolees she formerly supervised were interviewed. *See Amended Complaint* ¶ 23(ii), (iii). However, this is precisely what a well-run office should do. A transferred employee cannot insist that her files in the old location be left untouched or her old office be treated as a shrine.

Again, Weeks does not allege how these actions effected a "materially adverse change in the terms and conditions of employment." *Galabya,* 202 F.3d at 640. To the extent Weeks claims retaliation in connection with these charges, the claim fails, absent allegations sufficient to establish that Weeks suffered an adverse employment action. *See Holtz v. Rockefeller & Co.,* 258 F.3d 62, 79 (2d Cir.2001).

Weeks had no opportunity to take discovery before certain of her claims were dismissed. But the allegations contained in Weeks' complaint, even read in a light most favorable to Weeks, are wholly consistent with the businesslike conduct of DOP's affairs, without hostility or retaliation directed against anyone (except possibly Hoy). To preserve these claims, we would have to do more than read them in a light favorable to her claim; we would in effect have to invent that portion of her

complaint explaining why those actions are adverse to her. *See Leeds v. Meltz,* 85 F.3d 51, 52 (2d Cir.1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."); *cf. Dawes v. Walker,* 239 F.3d 489, 493 (2d Cir.2001) (expressing unwillingness, in the context of a prisoner complaint of retaliation, "simply to assume" that bald allegations were "sufficient to deter a reasonable prisoner in the exercise of his constitutional rights"); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.,* 170 F.R.D. 361, 385 (S.D.N.Y.1997) ("While this Court recognizes its duty to construe [plaintiff's] well-pleaded allegations in the light most favorable to [her], this Court is not obliged to judicially reconstruct [the complaint] so that it may state a viable cause of action."); *Bernheim v. Litt,* 79 F.3d 318, 327 (2d Cir.1996) (Jacobs, concurring) ("We should seek [a] balance even at the Rule 12(b)(6) pleading stage, treating retaliation as actionable only if, measured by a standard of reasonableness, it affects employment in a way that is both detrimental and substantial."). A pleading that omits facts to show that an employment action is adverse in character is plainly insufficient. Even on a motion addressed to the pleadings, every plaintiff is deemed to know where her own shoe pinches.

## C. Motion to Supplement the Complaint.

 This Court reviews a district court's denial of a motion to supplement the complaint for abuse of discretion. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 66 (2d Cir.1995).

The DOP fired Weeks in March 2000, three months before trial. On April 20, Weeks served on opposing counsel a motion to supplement her amended complaint to allege that the termination was discrimi-

natory and retaliatory, and to include further evidence of a hostile work environment. However, as established at oral argument in this Court, the motion was never docketed with the district court, and for that reason there was no hearing on this issue until June 2, 2000—the Friday before the scheduled start of the trial on Monday. Although the DOP did not oppose the motion ("in the interest of judicial economy," it says), the court denied it from the bench, presumably to avoid delay of the trial or delay at trial.

■■■■ A motion to plead events that have transpired *since* the date of the party's most recent pleading "is technically categorized under [Fed.R.Civ.P.] 15(d) ['Supplemental Pleadings'] as opposed to Rule 15(a) ['Amendments']." *Flaherty v. Lang,* 199 F.3d 607, 613 n. 3 (2d Cir.1999) (internal quotation marks omitted). Rule 15(d) provides in relevant part that:

> [u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.

Fed.R.Civ.P. 15(d). The threshold consideration for the district court is whether "the supplemental facts connect [the supplemental pleading] to the original pleading." *Quaratino,* 71 F.3d at 66. In Weeks' case, this consideration is affected by the requirement under Title VII that an unexhausted, supplemental claim be "reasonably related" to the original EEOC charge. *Rose v. New York City Bd. of Educ.,* 257 F.3d 156, 163 (2d Cir.2001) (citing *Butts v. City of New York Dep't of Hous. Preservation and Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993)). If there is a relationship, then leave to supplement should be "freely permitted" absent "un-

due delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Quaratino,* 71 F.3d at 66. The parties advised us at oral argument that the motion was denied for reasons of undue delay and futility.

■■■■ We need not decide whether the termination issue was or was not sufficiently related to Weeks' prior complaints or to the allegations in Weeks' EEOC charge. In either event, it was within the sound discretion of the district court to deny leave to amend. *See Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995). The motion, which was never docketed, was first presented to the court for decision the Friday before the Monday trial. Although it appears that the court was aware for some time that Weeks had been fired and that this development might precipitate a new claim, it cannot be expected that the court would entertain the issue *sua sponte.* By the time the court was presented with the issue, the granting of the motion would potentially have entailed an amended pre-trial order, additional documents and additional witnesses (with any associated evidentiary issues), additional briefing, an expanded jury charge, and a longer trial than anticipated. The court had discretion to grant the motion—defendant's counsel was not objecting—but by the same token the court had discretion to consider its own interests in systematic trial preparation and an orderly trial, and to deny the motion, as it did.

### D. Batson Challenge.

*Batson v. Kentucky,* 476 U.S. 79, 86, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), held that a prosecutor could not exercise peremptory strikes to eliminate potential jurors solely because of their race. In 1991, the Supreme Court extended the *Batson* rule to peremptory strikes in civil cases. *See*

*Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 629–30, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

 The district court, citing intervening events, refused to consider Weeks' *Batson* objection on the merits, and ruled that the objection had been waived by delay. The relevant events took place on the morning and afternoon of the first trial day.

In the morning, both sides exhausted their challenges to potential jurors; the jury was excused from the courtroom without being sworn; the DOP made a motion in limine to preclude certain evidence, and the motion was argued; a colloquy ensued as to which witnesses Weeks would be presenting that day; the court discussed settlement with the parties, and counsel for the DOP agreed to try to reach her client to discuss a settlement offer; and court recessed for lunch.

The afternoon session that day began at 2:10 p.m. Counsel for the DOP explained that she had been unable to reach her client, and Judge Johnson announced that he would be proceeding with the trial. At that point, Weeks made the *Batson* motion, and the court denied it. After that, Judge Johnson asked counsel whether the jury otherwise was "satisfactory"; both sides said yes; the court ruled on the *in limine* motion; and the jury was brought in and sworn.

In ruling that the *Batson* motion was untimely, Judge Johnson explained that he could no longer remember who had been struck from the venire that morning; that it would be difficult at that point for the DOP lawyers to explain why they had struck a particular juror; and that in any event the stricken jurors were "not here anymore."

Weeks' counsel explained that he had not wanted to make the claim "in front of the jury"; but Judge Johnson observed that the lawyers had been at sidebar when the peremptory strikes were announced. Counsel then suggested that he was waiting "to see if we could get settlement discussions."

*Batson* itself states that a challenge to an adversary's peremptory strikes must be made in a "timely" fashion. In *McCrory v. Henderson*, 82 F.3d 1243, 1249 (2d Cir. 1996), we held that "the failure to object to the discriminatory use of peremptory challenges prior to the conclusion of jury selection waives the objection." However, because the defendant in *McCrory* waited to object until after the trial, *McCrory* offered no occasion for deciding when for this purpose "jury selection" is deemed "concluded," a question presented by the present appeal.

In *United States v. Franklyn*, 157 F.3d 90, 97 (2d Cir.1998), we relied on *McCrory* and stated that "a lawyer must challenge an adversary's use of peremptory challenges *before* the completion of jury selection, in part so that the court can (i) contemporaneously assess the adversary's conduct; and (ii) remedy any improper conduct without having to repeat the jury selection process." In *Franklyn*, the defendant's attorney did not raise a *Batson* challenge "until after *voir dire* had been completed, the challenged jurors had been dismissed, and court reconvened after a lunch recess," and it was deemed waived. *Id.*

Many of the reasons that justify the contemporaneous objection rule adopted in *McCrory* and reaffirmed in *Franklyn* apply with equal force here, and support a rule affording trial judges discretion to deny *Batson* motions unless they are made during *voir dire*, or very shortly afterward—regardless of whether a jury has yet been sworn. Thus *McCrory* recognized that lawyers may have difficulty in

articulating reasons for the strikes after time has passed:

> [T]he nature of the peremptory challenge mandates that any objection to its use be raised and ruled upon promptly. The decision to exercise a peremptory challenge, in contrast to a challenge for cause, is subjective; and, often, the reasons behind that decision cannot be easily articulated. Such decisions may legitimately be based not only on answers given by the prospective juror to questions posed on voir dire, but also on the prosecutor's observations of the prospective juror.... Because challenges are often based on such subtle, intangible impressions, *the reasons for exercising the challenges may be quite difficult to remember if an objection is not raised promptly.*

*Id.* at 1247–48 (emphasis added) (internal quotation marks and citations omitted). *McCrory* also recognized that a delayed objection handicaps the judge's ability to make correct rulings:

> Given the often subtle reasons for the exercise of peremptory challenges, a court's determination of whether a prosecutor has used them in a discriminatory fashion will often turn on the judge's observations of prospective jurors and the attorneys during voir dire and an assessment of their credibility. *It is nearly impossible for the judge to rule on such objections intelligently unless the challenged juror either is still before the court or was very recently observed.*

*Id.* at 1248 (emphasis added) (internal citations omitted).

These considerations militate in favor of affirming Judge Johnson's denial of a *Bat-*

*son* motion first made after the fully selected jury returned from recess.[4] Judge Johnson offered two principal reasons. First, he noted that the stricken jurors were "not [t]here anymore." One of the remedies for a *Batson* violation therefore was no longer available, *i.e.,* reinstatement of the stricken juror, *see McCrory,* 82 F.3d at 1247 (noting that a potential remedy is " 'to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire,' " quoting *Batson,* 476 U.S. at 99 n. 24, 106 S.Ct. 1712). The unavailability of this fair and easy remedy militates in favor of a finding of untimeliness, although *McCrory* makes clear that the consideration is not dispositive. *See id.* (contemplating that if it is "not feasible" to disallow abusive challenges "because the challenged jurors have already been released, additional jurors might be called to the venire and additional challenges granted to the defendant;" or if that remedy is "insufficient, the jury selection might begin anew with a fresh panel").

More significantly, Judge Johnson explained that he had difficulty remembering the peremptory challenges because so many events had taken place in the time elapsed-which is not at all surprising given the sequence of events that day, as set out earlier in this opinion. Indeed, *McCrory* cited the need for the judge's fresh memory of *voir dire* as an important reason supporting the contemporaneous objection rule.

### III

We have considered all of Weeks' other arguments on appeal and find them to be without merit.

---

**4.** A district court's finding of discriminatory motive is reviewed for clear error, *see United States v. Taylor,* 92 F.3d 1313, 1326 (2d Cir. 1996); but we have not stated the appropriate standard for review of the denial of a *Batson* motion as untimely. Here, we think it apparent that Judge Johnson's ruling was based entirely on the factual circumstances of delay and their effect, and is premised on no legal error. We therefore review it for clear error.

For the reasons stated above, we affirm the district court's dismissal of the Title VII claims and the district court's denial of Weeks' *Batson* objection on the ground of untimeliness.