**Kelli RECKARD, Plaintiff**

v.

**COUNTY OF WESTCHESTER, Defendants**

**No. 03 CIV. 593(SCR).**

United States District Court, S.D. New York.

Dec. 14, 2004.

---

Leonard Buddington, Jr., Yonkers, NY, for Plaintiff.

Irma Wheatfield Cosgriff, Josephine Trovini, White Plains, NY, for Defendants.

### MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. Background

#### A. Procedural Posture

In October 2000, Kelli Reckard (the "Plaintiff") filed an initial complaint with the State Division of Human Rights ("SDHR") alleging race and gender discrimination under Title VII against the Westchester County Department of Correction ("Department"). The Plaintiff filed a initial complaint against the Department in April 2001, alleging improper retaliation in response to her second complaint. The SDHR dismissed both complaints in November 2002.

After receiving right to sue letters from the EEOC, the Plaintiff brought this suit against the County of Westchester ("Defendant") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3 et seq., alleging claims of retaliation and discrimination based on race. United States District Judge Rakoff dismissed the Plaintiff's race discrimination claim but permitted the Plaintiff to file an amended complaint containing the retaliation claim. After the case was assigned to this court, the Defendant filed this motion for summary judgment, on the ground that Plaintiff has failed to allege a legally cognizable adverse employment action, establish any causal link between the alleged protected activity and acts of retaliation, or offer any evidence to rebut Defendant's proffered non-discriminatory reasons for whatever actions it took in this case.

#### B. Statement of Facts

The Plaintiff has been employed as a correction officer by the Department since 1987, but has not been at work since May 2002.[1] On August 22, 2000, Sergeant Beth Ehren ordered the Plaintiff to remove bracelets that she was wearing while on duty. The Department's Uniform Dress Code Policy prohibits members of the Department from wearing "any facial jewelry, earrings, exposed dangling necklaces or exposed dangling bracelets." The Plaintiff refused to remove the bracelets, and instead wrote a report explaining that the bracelets have sentimental value and are, in any event, usually concealed by her sweaters. On August 23, 2000, the Plaintiff was again ordered to remove the bracelets, and this time she agreed to have a jeweler remove them by August 28, 2000. On August 28, 2000, a third Sergeant asked the Plaintiff if she had removed her bracelets. The Plaintiff indicated that she

1. She has been receiving sick injury benefits since that time.

had not had them removed, and instead submitted a report claiming job injury as a result of "constant conflict pertaining to my personal jewelry." On September 16, 2000, the Plaintiff, who had yet to remove her bracelets, was counseled by Captain Paul Rocuzzo for failing to obey the dress code. The Plaintiff's first complaint to the State Division of Human Rights followed in October.

Plaintiff's retaliation claim focuses on the following allegations: 1) being ordered to work overtime on February 20, 2001 by Sergeant Ehren, even though she had medical restrictions that precluded her from working an extended shift; 2) being asked to update her medical documentation every 30 days; 3) being required to submit to a psychiatric examination in March 2001; 4) being denied training and/or assignment to certain posts she desired including booking and female search in July and August 2001; 5) being assigned on three or four occasions to posts at a non-air conditioned jail facility that were inappropriate in light of the Plaintiff's medical restrictions; 6) having her gun privileges temporarily suspended in October 2001, after she claimed a job-related stress injury and received psychiatric treatment.

## II.  Analysis

### A.  Background

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*

### B.  Retaliation Claim

■ The *McDonnell–Douglas* burden shifting analysis for employment discrimination cases applies to retaliation claims under Title VII. *See Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 94 (2d Cir.2001). First, the Plaintiff must establish a prima facie case of retaliation by showing that (a) she was engaged in a protected activity under Title VII; (b) the employer was aware of the Plaintiff's participation in the protected activity; (c) the Plaintiff was subjected to an adverse employment action; and (d) there is a nexus between the protected activity and the adverse employment. *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, (2d Cir. 1997). The burden then shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action. *Slattery*, 248 F.3d at 94. If the Defendants meet this burden, the Plaintiff has the opportunity to prove that the proffered reasons are a pretext for retaliatory action. *Id.* The court finds that each alleged retaliatory action alleged in this case either does not constitute a legally cognizable adverse employment action, has been explained by some nondiscriminatory reason that has not been rebutted by the Plaintiff, or both.

■ In order to be considered "materially adverse," a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. *Weeks v. New York State and Hoy*, 273 F.3d 76, 85 (2d Cir.2001). Examples of adverse employment actions include termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation. *See id.*

■ First, Sergeant Ehren's order that the Plaintiff work overtime on February 20, 2001 could not, given the undisputed facts of this case, be reasonably construed as an adverse employment action. Even assuming that overtime work was inconsistent with her health status, requiring her to work a single over time shift cannot reasonably be construed as a materially adverse change in her overall working conditions, particularly because the collective bargaining agreement between the Correction Officers Benevolent Association ("COBA"), the Plaintiff's union, and the Defendant permitted the Defendant to order correction officers to work overtime shifts. Moreover, the Plaintiff never alleged that working this shift had any detrimental impact on her health, and it is undisputed that the Plaintiff was given overtime pay for the hours she worked. Also, the Defendant provided a nondiscriminatory explanation for assigning Plaintiff to this shift despite her alleged health problems—the fact that Plaintiff had not provided up-to-date documentation of her medical condition, which was required by Department policy—and Plaintiff has provided no evidence to rebut this explanation and indicate that it was a pretext.

■ Requiring that the Plaintiff provide updated medical documentation is not an adverse employment action either. *See O'Dell v. Trans World Entm't Corp.*, 153 F.Supp.2d 378, 396 (S.D.N.Y.2001). Neither is a requirement that the Plaintiff undergo a psychiatric examination. *See Nicastro v. Runyon*, 60 F.Supp.2d 181, 186 (S.D.N.Y.1999) (requiring documentation for sick leave does not constitute an adverse employment action). Moreover, Plaintiff does not contest the fact that these medical examinations were required by the collective bargaining agreement in

order for Plaintiff to receive relief from inappropriate assignments.

■ Failing to assign the Plaintiff to perform the tasks she desired, such as booking and female search, cannot form the basis of a Title VII claim either. The nature of the Plaintiff's assignments did not affect her pay, benefits or any other terms of her employment. As mentioned, an adverse employment action must be more disruptive than a mere alteration of job responsibilities. *See Weeks*, 273 F.3d at 85. The Plaintiff's subjective dissatisfaction with her assignments is insufficient. *See Brown v. Snow*, 2003 WL 1907974, at *4 (S.D.N.Y.2003), 2003 U.S. Dist. LEXIS 6563, at *13.

The court is, moreover, entirely unpersuaded by Plaintiff's argument that she suffered an adverse employment action because, if she had been assigned to the posts in booking and female search that she wanted, she would have received training that would have helped her perform better on the civil service examination, and therefore would likely have been promoted. First, Plaintiff has failed to offer any evidence that officers had the right to receive any or all of the training that they wanted. Rather, the undisputed facts indicate that officers received training necessary to perform assignments that they "post bid" for and received, and that the Plaintiff never post bid for positions in booking and search. Moreover, allowing such unsubstantiated and speculative claims to constitute adverse employment actions is entirely consistent with the statute's focus on materially adverse changes in the terms of her employment

Further, assigning the Plaintiff posts that she claimed to have been in appropriate in light of her health restrictions does not constitute an adverse employment action. Plaintiff does not claim that she lost any salary or benefits when she opted not

to perform tasks that she believed were inappropriate. And each time the Plaintiff complained about an assignment, her posting was reviewed in accordance with the collective bargaining agreement.

 Finally, the temporary suspension of the Plaintiff's firearm privileges cannot form the basis for a Title VII claim. Like all the other alleged adverse actions in this case, suspending her gun privileges had no effect on her pay or other employment benefits. Moreover, the undisputed evidence indicates that the Plaintiff never even owned a gun, and that suspending her gun privileges after she had claimed a stress-related injury was required by the Department's existing Firearm Policy.

Plaintiff argues that, even if none of the actions that the Plaintiff alleges could individually be characterized as adverse, the cumulative effect of the Defendant's actions constituted an adverse employment action. Second Circuit precedent allows a combination of seemingly minor incidents to form the basis of a *constitutional* retaliation claim once they reach a critical mass. *See Phillips v. Bowen,* 278 F.3d 103, 109 (2d Cir.2002) (plaintiff must demonstrate that the actions allegedly taken by defendants created a working environment unreasonably inferior to what would be considered normal for that position). And courts in this district have, on occasion, held that a series of individually insufficient allegations may constitute an adverse action in the context of Title VII. *See, e.g., Timothy v. Our Lady of Mercy Med. Ctr.,* 2004 WL 503760, at *6–7 (S.D.N.Y.), 2004 U.S. Dist. LEXIS 3970, at *19–20 (citing cases).

But even assuming that such a theory is legally cognizable under Title VII, Plaintiff could not reasonably rely upon it in this case. Plaintiff has, at most,

alleged a two-month period of dissatisfaction with her work assignments and a series of other minor and occasional inconveniences. Even viewed cumulatively, these actions cannot reasonably be construed as having produced an unreasonably inferior work environment.

Therefore, Plaintiff's retaliation claim must be dismissed.

### III.  Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of the court is directed to close this case.

It is so ordered.