ISLAMIC SOCIETY OF FIRE DE-
PARTMENT PERSONNEL and Kevin
James, on behalf of himself and all
others similarly situated, Plaintiffs,

v.

CITY OF NEW YORK,
et al., Defendants.

No. 00 CV 3075 ILG.

United States District Court,
E.D. New York.

June 11, 2002.

Robert T. Perry, Esq., Center for Constitutional Rights, New York.

Laura H. Corvo, Esq., Assistant Corporation Counsel, New York.

## MEMORANDUM & ORDER

GLASSER, District Judge.

Plaintiffs Islamic Society of Fire Department Personnel (the "Islamic Society") and

Kevin James ("James") (collectively, "Plaintiffs") have moved the Court for leave to file a Second Amended Complaint. Defendants City of New York, Mayor Rudolph Giuliani, Fire Commissioner Thomas Von Essen, First Deputy Fire Commissioner William Feehan, Fire Department Chief Joseph Casaburi, Chief Fire Marshal Louis Garcia, and Chief of Staff Michael Vecchi (collectively, the "City Defendants") oppose Plaintiffs' motion on the ground that the proposed additional claims are futile.[1] For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

The Islamic Society is a non-profit, fraternal membership organization incorporated and existing under New York law. (*See* Proposed Sec. Am. Compl. ¶ 20.) The Islamic Society is a "line organization" of the Fire Department of the City of New York ("FDNY"). (Pl. Mem. at 2.)[2] Members of the Islamic Society are current and former personnel of the FDNY who are "primarily of the Islamic faith." (*Id.*) The Islamic Society was formed in 1997 to "represent Muslim FDNY employees and act as an interface between the FDNY and the Muslim community in New York City." (*Id.*) Plaintiff James is a founding member, and the current President, of the Islamic Society, and is a Fire Marshal with the FDNY. (*Id.* ¶ 24.)

Plaintiffs allege that the City Defendants—which include the City, the former Mayor and various senior FDNY personnel—have engaged in a "longstanding pattern" of discrimination against Muslim employees of the FDNY. This purported discrimination allegedly includes, among other things, having denied the Islamic Society the same privileges granted to other line organizations (*see* Pl. Mem. at 2); refusing to appoint a Muslim chaplain (*see id.*); and retaliating against Muslim employees who have complained about this alleged discrimination (*see id.*).[3]

On June 23, 2000, Plaintiffs commenced this purported class action to remedy the alleged discrimination. At that time, Plaintiffs also sought a mandatory injunction compelling the City Defendants to appoint a Muslim chaplain in the FDNY. (*See* Perry Aff. ¶ 4.) At an initial status conference, Plaintiffs agreed to limit the initial discovery in this case to class certification issues and Plaintiffs' preliminary injunction motion. (*Id.*)

In June of 2001, the FDNY apparently decided to hire a Muslim chaplain. (*See id.* ¶ 7.) Once advised of the FDNY's decision, Plaintiffs agreed (i) not to seek class certification, (ii) to stay all discovery, and (iii) to attempt to resolve the remaining

---

1. In addition to seeking leave to assert new claims, Plaintiffs also seek leave to allege "relevant pre-existing facts discovered by Plaintiffs subsequent to the filing of the Amended Complaint, including facts concerning the policies and practices of the [FDNY] for the appointment of chaplains." (Pl. Notice of Motion at 1.) The City Defendants have not opposed this portion of Plaintiffs' motion, and, accordingly, this portion of Plaintiffs' motion is granted.

2. An FDNY "line" or "fraternal" organization is a formal association of FDNY employees "who share a common ethnic or religious background." (Proposed Sec. Am. Compl. ¶ 40.) The FDNY recognizes certain non-governmental line organizations, and "bestows certain privileges" on those organizations not bestowed on other groups of FDNY employees. (*Id.*) Such privileges include direct access to the Fire Commissioner; permission to conduct charity drives among FDNY employees; and access to unused rooms at the FDNY's headquarters. (*Id.*)

3. It appears that the crux of Plaintiffs' dispute with the City Defendants is the FDNY's refusal to hire a Muslim chaplain.

issues in this case. (*See id.* ¶ 8.) Plaintiffs and the Majlis Ash–Shura (the Islamic Leadership Council of New York City) then recommended that Imam Muhammad Abdulmalik be given the chaplain job. (*See id.*) The FDNY agreed to interview Imam Abdulmalik. (*See id.*)

However, Plaintiffs allege that by the time the FDNY actually interviewed Imam Abdulmalik (in August 2001), the FDNY had already decided to hire Dr. Abd'allah A. Adesanya as the Muslim chaplain. (*See id.* ¶¶ 10, 13–14.) In doing so, Plaintiffs contend that the FDNY "departed from its usual practice of deferring to the leadership of the respective religious communities in New York City when selecting chaplains of the respective faiths." (*Id.* ¶ 12.) Furthermore, Plaintiffs assert that Dr. Adesanya's credentials "pale in comparison to Imam Abdulmalik's" (*id.* ¶ 14), and that the FDNY has proffered no reason why Dr. Adesanya was chosen over Imam Abdulmalik (*id.*).

In light of these events, Plaintiffs now seek leave to amend their complaint to add four new claims against the City Defendants, each of which is based on the decision not to hire Imam Abdulmalik as the FDNY's Muslim chaplain. In the first claim (referred to hereinafter as "Proposed Claim 1"), Plaintiffs allege that, in rejecting Imam Abdulmalik as the Muslim chaplain, the City Defendants discriminated against them based on their religion, in violation of Title VII. In the second claim ("Proposed Claim 2"), Plaintiffs allege that the City Defendants, in violation of Title VII, refused to hire Imam Abdulmalik in retaliation for Plaintiffs' decision to (i) bring this lawsuit and (ii) publicly criticize the FDNY's decision to hire Edward McMellon.[4] The third claim ("Pro-

posed Claim 3") is based on the same allegations as the second claim, but alleges a violation of the First Amendment instead of Title VII. In the fourth claim ("Proposed Claim 4"), Plaintiffs allege that, as a result of the decision not to hire Imam Abdulmalik, the City Defendants violated the First Amendment's Establishment Clause. (*See* Pl. Mem. at 5.)

The City Defendants oppose Plaintiffs' motion for leave to amend. According to the City Defendants, each of Plaintiffs' newly added claims fails as a matter of law, and thus the proposed amendment is futile. (*See* Def. Mem. at 5–11.) Specifically, the City Defendants argue that Proposed Claims 1–3 fail because (i) Plaintiffs have not suffered an "adverse employment action" due to the decision not to hire Imam Abdulmalik, and (ii) Plaintiffs cannot establish a causal connection between their protected activities and the allegedly "adverse" action. (*See id.* at 5–9.) The City Defendants further argue that Proposed Claim 4 fails because Plaintiffs have not suffered a "palpable injury" sufficient to establish their standing to sue under Article III of the Constitution. (*See id.* at 9–11.)

### DISCUSSION

#### I. *Motion to amend principles*

■ The decision whether to grant or deny a motion for leave to amend a complaint is within the sound discretion of the Court, *see, e.g., O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 69 (2d Cir.2002) (citation omitted); *Krumme v. WestPoint Stevens, Inc.,* 143 F.3d 71, 88 (2d Cir.1998) (citations omitted), though leave to amend should be "freely given when justice so

---

**4.** Mr. McMellon was one of the police officers involved in the shooting of Amadou Diallo.

(*See* Perry Aff. ¶ 6.)

requires," Fed.R.Civ.P. 15(a). It is proper to permit an amendment to a complaint to "set[ ] forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed.R.Civ.P. 15(d). A motion seeking leave to add such transactions or occurrences should be evaluated under the same liberal standard as a motion for leave to amend under Rule 15(a). *See, e.g.,* 3 James Wm. Moore et al., Moore's Federal Practice § 15.30 (3d ed. 2000) ("The same principles that support the liberal amendment of pleadings also apply to supplemental pleadings [under Rule 15(d) ]."); *Novak v. Nat'l Broad. Co.,* 724 F.Supp. 141, 145 (W.D.N.Y.1989) ("Although Rule 15(d) does not include Rule 15(a)'s mandate that leave to amend be freely given when justice so requires, the same standards apply to motions under both these subdivisions of Rule 15.") (citation omitted).

In determining whether leave to amend should be granted, the Court should consider the futility of the proposed amendment. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Grace v. Rosenstock,* 228 F.3d 40, 53 (2d Cir.2000). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002) (citing *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)). However-

er, Second Circuit courts have also held that, in certain circumstances, it is appropriate to deny leave to amend where the proposed amendment could not withstand a motion for summary judgment. *See Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001) (appropriate to deny motion for leave to amend filed in response to summary judgment motion where proposed new claims would not survive summary judgment); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) (affirming district court's decision denying leave to amend complaint where facts demonstrated proposed amendments failed as a matter of law); *Stoner v. N.Y.C. Ballet Co.,* No. 99 Civ. 0196, 2002 WL 523270, at *14 n. 10 (S.D.N.Y. Apr.8, 2002) (denying motion for leave to amend seeking to add claim which "might survive a motion to dismiss" because "the claim would ... be subject to dismissal on a motion for summary judgment"); *131 Maine St. Assocs. v. Manko,* 179 F.Supp.2d 339, 345 n. 5 (S.D.N.Y.2002) ("leave to amend will be denied if the proposed amended complaint could not survive a summary judgment motion"); *Azurite Corp. v. Amster & Co.,* 844 F.Supp. 929, 939 (S.D.N.Y.1994) (denying plaintiff leave to amend complaint where proposed amendment "would be futile because the factual foundations of [plaintiff's] new allegations are insufficient, as a matter of law, to withstand defendants' motion for summary judgment"), *aff'd,* 52 F.3d 15 (2d Cir.1995).[5]

**5.** Other federal courts also recognize that it is appropriate to deny leave to amend where the proposed claims are subject to dismissal on summary judgment. *See, e.g., Watson ex rel. Watson v. Beckel,* 242 F.3d 1237, 1239–40 (10th Cir.2001) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment."); *Bethany Pharmacal Co. v. QVC, Inc.,* 241 F.3d 854, 861 (7th Cir.2001) ("An amendment is futile if the add-

ed claim would not survive a motion for summary judgment."); *Burns v. AAF–McQuay, Inc.,* 166 F.3d 292, 294–95 (4th Cir.1999) (leave to amend properly denied where plaintiff's evidence insufficient to support proposed claims); *Roth v. Garcia Marquez,* 942 F.2d 617, 629 (9th Cir.1991) (affirming denial of motion for leave to amend because, "[w]ere amendment allowed, the claim would certainly be defeated at summary judgment"); *Adkins v. Labor Ready, Inc.,* 205 F.R.D. 460, 462 (S.D.W.Va.2001) ("it is appropriate for a

## II. The Motion Should Be Denied Vis–a–Vis Proposed Claims 1–3

Proposed Claims 1–3 allege discrimination (Proposed Claim 1) and retaliation (Proposed Claim 2) in violation of Title VII, and retaliation in violation of the First Amendment (Proposed Claim 3). All of these claims are predicated on the City Defendants' decision to hire Dr. Adesanya, and not Imam Abdulmalik, as the FDNY's Muslim chaplain. (*See* Pl. Mem. at 5; Pl. Reply at 1–2.)

The City Defendants argue that, in order to state a *prima facie* case on each of these claims, Plaintiffs must demonstrate that they have suffered an "adverse employment action." (*See* Def. Mem. at 6–7.) According to the City Defendants, the decision to hire Dr. Adesanya instead of Imam Abdulmalik simply cannot be viewed as an "adverse employment action," and thus Proposed Claims 1–3 necessarily fail. Accordingly, the City Defendants argue that Plaintiffs' motion for leave to amend their complaint should be denied, as the amendment would be futile.

As set forth below, the City Defendants are correct.

### A. The Title VII claims (Proposed Claims 1 and 2)

#### 1. The framework for evaluating Title VII claims

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII claims are evaluated under the now familiar *McDonnell Douglas* "burden shifting" analysis.[6] Under this analysis, the plaintiff bears the initial burden of "proving by a preponderance of the evidence a *prima facie* case of discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *accord Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir.1994). When a plaintiff establishes a *prima facie* case, the plaintiff "in effect creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Once a *prima facie* case is established, the burden shifts to the defendant to rebut the presumption of discrimination by providing a legitimate, non-discriminatory reason for the employment decision. *Burdine*, 450 U.S. at 253–54, 101 S.Ct. 1089; *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000). If the defendant articulates a legitimate, non-discriminatory reason, the *McDonnell Douglas* framework—and its presumptions and burdens—drops out of the picture. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The plaintiff then must establish that the defendant's articulated reason is a pretext for discrimination. *Id.* at 143, 120 S.Ct. 2097.

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) his job

court to deny a motion to amend if the amendment will be . . . unable to survive a motion for summary judgment"); *Kidd v. Pennsylvania*, No. Civ. 97–5577, 1999 WL 391496, at *12 (E.D.Pa. May 20, 1999) ("An amendment is futile if the amended pleading cannot withstand a motion for summary judgement.").

6. *See McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

performance was satisfactory; (3) he was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 153–54 (2d Cir.2000). Similarly, to establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that (1) he participated in a protected activity; (2) the defendant was aware of the plaintiff's participation in the protected activity; (3) he was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken. *See Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir.2000); *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993). In either case, the burden on the plaintiff to establish the *prima facie* case is minimal. *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir.2001) (discrimination case); *Gordon*, 232 F.3d at 116 (retaliation case).

■ The *prima facie* case under *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002). Accordingly, a plaintiff need not plead facts establishing each element of the *prima facie* case; rather, the *McDonnell Douglas* analysis applies only with respect to whether the plaintiff can *prove* a Title VII claim. At the pleading stage, the plaintiff must "satisfy only the simple requirements of Rule 8(a)," *i.e.*, the plaintiff's allegations must "give [the defendant] fair notice of what [the plaintiff's] claims are and the grounds upon which they rest." *Id.* at 999 (citing *Conley v. Gibson*, 355

U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

> 2. The Title VII claims fail because *there has been no adverse employment action*

As the discussion above makes clear, in order to prove their discrimination and retaliation claims under Title VII, Plaintiffs must be able to demonstrate that they suffered an "adverse employment action." The question the Court must answer is whether the decision not to hire Imam Abdulmalik is an adverse employment action. In answering this question, the Court is mindful that the claims Plaintiffs seek to add to their complaint are not predicated on the decision not to hire a Muslim chaplain *at all;* rather, Plaintiffs' claims are based solely on the City Defendants' decision not to hire the Muslim chaplain *of Plaintiffs' choice.*

The term "adverse employment action" is not defined in Title VII. Not surprisingly, then, the question of what constitutes an adverse employment action has received significant attention from the federal courts, which have not reached a consensus on the issue. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (discussing varying approaches). Some courts, such as the Fifth and Eighth Circuits, have held that an "adverse employment action" relates only to "ultimate employment actions," such as hiring, firing, promotions and demotions. *See, e.g., Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir.1997); *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997). Other courts, including the First, Ninth, Tenth, Eleventh and D.C. Circuits, take an "expansive view" of what may be considered an adverse employment action. *See Ray*, 217 F.3d at 1241 (collecting cases).[7]

---

7. *See also* Joel A. Kravetz, *Deterrence v. Mate-* *rial Harm: Finding the Appropriate Standard*

 The Second Circuit takes a "middle-of-the-road" approach.[8] In this circuit, an adverse employment action is a "materially adverse change in the terms and conditions of employment." *Weeks v. N.Y. State (Div. of Parole),* 273 F.3d 76, 85 (2d Cir.2001) (quoting *Galabya v. N.Y.C. Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000)); *accord Richardson v. N.Y. State Dep't of Corr. Serv.,* 180 F.3d 426, 446 (2d Cir.1999). The employment action need not involve job termination or a reduction in wages; "less flagrant reprisals by employers may indeed be adverse." *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997) (citing *Collins v. State of Ill.,* 830 F.2d 692, 703 (7th Cir. 1987)). That fact notwithstanding, "not every unpleasant matter short of [discharge or demotion] creates a cause of action" under Title VII. *Richardson,* 180 F.3d at 446 (alteration in original) (internal quotation marks and citations omitted); *see also Weeks,* 273 F.3d at 85 ("[t]o be 'materially adverse,' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities") (citation omitted). Such a change "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Weeks,* 273 F.3d at 85 (citation omitted). There are no "bright-line rules" for determining whether an employee has suffered an adverse employment action; accordingly, the Court must "pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Richardson,* 180 F.3d at 446; *accord Wanamaker,* 108 F.3d at 466. "The key ... is that the plaintiff must show that the [action] created a 'materially significant disadvantage.'" *Galabya,* 202 F.3d at 641 (quoting *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994)).

Here, Plaintiffs assert that "[a]ccess to a chaplain of one's own faith is clearly an important 'term, condition, or privilege of employment' in the FDNY ... given that firefighters (and other FDNY employees) frequently seek out chaplains *of their own faith* for counseling on marital problems and other personal matters." (Pl. Reply at 10 (emphasis in original).) In light of this fact, Plaintiffs argue that the decision to hire Dr. Adesanya instead of Imam Abdulmalik constituted a material adverse change to this "term, condition or privilege" because (i) Dr. Adesanya is "possibly unqualified" to serve as a Muslim chaplain, and (ii) the "sham" hiring process employed by the City Defendants "tainted" Dr. Adesanya, the end result of which is that "many Muslim employees in the FDNY, including plaintiff James, likely will never seek out 'Dr.' Adesanya for counseling on family problems and other confidential personal matters." (*Id.* at 9–10.)

These allegations—which the Court notes are speculative, at best, and are not pleaded in the proposed Second Amended

---

to Define an *"Adverse Action" in Retaliation Claims Brought Under the Applicable Equal Employment Opportunity Statutes,* 4 U. Pa. J. Lab. & Emp. L. 315, 321–55 (2002) (discussing varying approaches); Matthew J. Wiles, Comment, *Defining Adverse Employment Action in Title VII Claims for Employer Retaliation: Determining the Most Appropriate Standard,* 27 U. Dayton L.Rev. 217, 223–29 (2001) (same); Melissa A. Essary & Terence D. Friedman, *Retaliation Claims Under Title VII, the ADEA, and the ADA: Untouchable Employees, Uncertain Employers, Unresolved Courts,* 63 Mo. L.Rev. 115, 132–41 (1998) (same).

8. *See* Essary & Friedman, *supra* note 7, at 137–38; *see also* Wiles, *supra* note 7, at 238.

Complaint—simply cannot amount to an adverse employment action as a matter of law. Plaintiffs have "suffered no loss of wages, benefits, responsibilities, or anything else." *Ruggieri v. Harrington,* 146 F.Supp.2d 202, 216 (E.D.N.Y.2001); *accord Markel v. Bd. of Regents of the Univ. of Wis. Sys.,* 276 F.3d 906, 911 (7th Cir.2002) ("Typically, adverse employment actions are economic injuries such as dismissal, suspension, failure to promote, or diminution in pay."). Furthermore, even assuming *arguendo* that access to a chaplain of one's own faith is a "term or condition" of employment,[9] the Court fails to see how the decision to hire Dr. Adesanya instead of Plaintiffs' preferred candidate, Imam Abdulmalik, in any way effects a "material adverse change" in that access. Indeed, there does not appear to be any dispute that Dr. Adesanya is Muslim; accordingly, Plaintiffs do, in fact, have access to a chaplain of their own faith. Clearly, then, when stripped of its rhetoric, Plaintiffs' argument amounts to nothing more than an allegation that, because they do not like Dr. Adesanya, Plaintiffs will not seek out his counsel, and thus they essentially do not have "access" to a chaplain of their faith. This is exactly the type of claim courts have frequently rejected, because "a plaintiff's purely subjective feelings about the events and circumstances surrounding the allegedly adverse employment action do not control." *Gronne v. Apple Bank for Sav.,* No. 98–CV–6091, 2000 WL 298914, at *5 (E.D.N.Y. Feb.14, 2000) (internal quotation marks and citation omitted).

One reason why a plaintiff's subjective feelings cannot be used to determine whether an employment action is "adverse" was succinctly set forth by the Eleventh Circuit in *Doe v. Dekalb County School District,* 145 F.3d 1441 (11th Cir. 1998). There, the court stated:

> [O]ur requirement that a plaintiff must show, as part of his *prima facie* case, that he has suffered an adverse employment action would be essentially meaningless if we were to utilize a subjective standard. In order for an honest plaintiff to go to the trouble of suing his employer, he must be unhappy with some action that his employer has taken. Given this basic fact, a subjective standard would mean that no court would ever seriously consider the adverse employment action prong of a *prima facie* ... case—we could just assume this element to be satisfied in every case. Even if we did not assume away the adversity requirement as a matter of course, a plaintiff could always prove this part of his case by testifying that he was unhappy with whatever employment action has brought him into court; an employer could rarely rebut its employee's statement of his own subjective feelings.

*Id.* at 1452. Along the same lines, if a plaintiff's subjective feelings regarding his employer's actions controlled, "every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996).

---

9. This, of course, is the critical question raised by the discrimination claims Plaintiffs originally filed in this Court. If access to a Muslim chaplain is not a "term, condition, or privilege" of Plaintiffs' employment, then the FDNY's prior decision not to hire a Muslim chaplain cannot be actionable under Title VII as a matter of law, because that refusal could not amount to an "adverse employment action." *See Weeks,* 273 F.3d at 85 (adverse employment action is a "materially adverse change in the terms and conditions of employment").

For these reasons, courts in this circuit have universally rejected attempts by plaintiffs to show an adverse employment action based simply on the plaintiff's personal feelings about the employer's actions. *See, e.g., Garber v. N.Y.C. Police Dep't,* 159 F.3d 1346 (Table), 1998 WL 514222, at *4 (2d Cir. June 12, 1998) ("Plaintiff, conceding that his change in position has not threatened his salary or benefits, attempts to rest his assertion that the transfer constituted an adverse employment action only on his unhappiness at being removed from a position he 'cherished.' It is not enough."); *Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997) (fact that acts left employee feeling "frightened" and "humiliated" failed to show employee suffered an adverse employment action); *Ruggieri,* 146 F.Supp.2d at 216 (fact that plaintiff was embarrassed by employer's actions inadequate to demonstrate adverse employment action); *Spohn v. West,* No. 00 CIV 0735, 2000 WL 1459981, at *6 (S.D.N.Y. Oct.2, 2000) (fact that plaintiff was offended by employer's decision to remove Christian religious symbols and install Jewish symbols insufficient to establish adverse employment action); *Gronne,* 2000 WL 298914, at *5–6 (plaintiff's "unhappiness at being transferred is not enough to constitute an adverse employment action"); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 264–65 (E.D.N.Y.1999) (transfer from teaching first grade to teaching pre-kindergarten not adverse employment action, despite (i) plaintiff's "disdain" for pre-kindergarten position and (ii) plaintiff's allegation that she enjoyed teaching subjects to first graders which were not taught to pre-kindergarten students); *Armfield v. Jacobson,* No. 95–CV–4820, 1998 WL 427560, at *6 (E.D.N.Y. Jan.21, 1998) (Title VII does not address "purely subjective matters," such as a preference to work in one location over another); *Bunis v. Run-*yon, No. 94 Civ.2063, 1997 WL 639241, at *3 (S.D.N.Y. Oct. 16, 1997) (plaintiff's unhappiness about denial of shift change request "not enough to transform that denial into an adverse employment action within the meaning of Title VII"); *cf. Nonnenmann v. City of N.Y.,* 174 F.Supp.2d 121, 132–33 (S.D.N.Y.2001) (refusal to transfer plaintiff to job location more convenient for him insufficient to constitute adverse employment action). In fact, even courts that define "adverse employment actions" broadly follow this logic. *See Brown v. Brody,* 199 F.3d 446, 457 (D.C.Cir.1999) (plaintiff who was "temporarily reassigned to a position she thought was undesirable, and ... was later not selected for a position she did find desirable" failed to demonstrate adverse employment action; "[m]ere idiosyncracies of personal preference are not sufficient"); *Horn v. County of San. Digeo,* 124 F.3d 211 (Table), 1997 WL 579145, at *2 (9th Cir. Sept.18, 1997) (unpublished opinion) (transfer to position plaintiff felt was less prestigious, and which plaintiff found humiliating, amounted only to "a subjective loss of job satisfaction rather than an adverse employment action"); *Doe,* 145 F.3d at 1448–54 (after noting that it had found "no case, in this or any other circuit, in which a court explicitly relied on the subjective preferences of a plaintiff to hold that that plaintiff had suffered an adverse employment action," court held that transfer from one teaching position to another, where plaintiff had a "deep, personal commitment" to prior position, insufficient to demonstrate adverse employment action); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 457 (7th Cir. 1994) (plaintiff's "bruised ego" as a result of transfer which plaintiff found "personally humiliating" insufficient to constitute adverse employment action); *see also Strother v. S. Cal. Permanente Med. Group,* 79 F.3d 859, 869 (9th Cir.1996) ("mere ostracism in the workplace is not

enough to show an adverse employment decision"); *Welsh v. Derwinski,* 14 F.3d 85, 86 (1st Cir.1994) (recognizing that "not every unpleasant matter ... creates a cause of action" under Title VII). Accordingly, because Plaintiffs have predicated their proposed Title VII claims (Proposed Claims 1 and 2) on their subjective displeasure with Dr. Adesanya, they cannot demonstrate that they have suffered an adverse employment action.

In an attempt to save their retaliation claim (Proposed Claim 2), Plaintiffs assert that, for the purposes of such a claim under Title VII, it is unnecessary to demonstrate an adverse employment action. (*See* Pl. Reply at 10–11.) Relying on *Ray v. Henderson,* 217 F.3d 1234, 1242–43 (9th Cir.2000), Plaintiffs argue that "[a]ny retaliatory treatment 'reasonably likely to deter' protected activity ... should suffice under Title VII's anti-retaliatory provision." (Pl. Mem. at 10.) [10] Plaintiffs' argument is unavailing, for a number of reasons.

First, *Ray* does not aid Plaintiffs' cause because, as noted above, the Ninth Circuit takes a more expansive view of the types of actions that may support a claim under Title VII than does the Second Circuit. The Second Circuit has continually reaffirmed the principle that, in order to state a *prima facie* case of retaliation under Title VII, a plaintiff *must* demonstrate that he or she has suffered an "adverse employment action." *See, e.g., Weeks,* 273 F.3d at 85; *Gregory v. Daly,* 243 F.3d 687, 700 (2d Cir.2001); *Cruz v. Coach Stores,*

*Inc.,* 202 F.3d 560, 565 (2d Cir.2000); *Richardson,* 180 F.3d at 443.

Furthermore, these claims would fail even if the Court were to evaluate them under a "reasonably likely to deter protected activity" standard. Plaintiffs baldly assert that "[t]he Adesanya appointment certainly falls" within this standard (Pl. Reply at 11), but there is no reason to conclude that the decision not to hire the Plaintiffs' preferred choice for Muslim chaplain is "reasonably likely to deter" Plaintiffs from engaging in protected activity. Indeed, the decision not to hire Imam Abdulmalik cannot be objectively viewed as any more likely to deter Plaintiffs from engaging in protected activity than transfers to alternative work locations, or actions which tend to "humiliate" or "embarrass." Yet these actions are insufficient to support Title VII claims, as noted above.[11]

■ In the end, the Court is guided by the principle that "[r]etaliation laws are intended to protect employees from genuine workplace mistreatment ...; they are not intended to guarantee that employees['] ... every desire will be fulfilled." *Ruggieri,* 146 F.Supp.2d at 218. Here, Plaintiffs have merely demonstrated that their desire to have Imam Abdulmalik as their chaplain has gone unfulfilled—they have not demonstrated that they have suffered an "adverse employment action." Plaintiffs therefore cannot state a *prima facie* case of discrimination or retaliation under Title VII, and thus their amendment—to the extent it seeks leave to add the Title VII claims—is futile. Accordingly, leave to amend the complaint to add Proposed Claims 1 and 2 is denied.[12]

---

**10.** Plaintiffs also cite *Passer v. American Chemical Society,* 935 F.2d 322 (D.C.Cir. 1991), but that case stands for the unremarkable proposition that acts beyond "discharge, transfer or demotion" can support a Title VII claim. *Id.* at 331.

**11.** If anything, the facts of this case seem to suggest that Plaintiffs would be *more* likely to engage in protected activity in the future, because Plaintiffs have achieved their primary goal in commencing this lawsuit: getting the FDNY to hire a Muslim chaplain.

**12.** The Court recognizes that, pursuant to the

**B. The First Amendment Retaliation Claim (Proposed Claim 3)** *Fails for the Same Reason the Title VII Claims Fail*

 A "public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *accord Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir.1994). Accordingly, a public employee may sue his employer if he has been retaliated against for exercising his First Amendment rights. In order to succeed on such a claim, the plaintiff must demonstrate that (1) he engaged in protected speech, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected speech and the adverse employment action. *Blum*, 18 F.3d at 1010 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)); *see also Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir.2002) (describing third prong of this test as requiring that the protected speech be a "motivating factor" in the adverse employment action). Thus, a plaintiff alleging a First Amendment retaliation claim, like a plaintiff alleging a Title VII claim, must demonstrate that he has suffered an adverse employment action. *Id.*

 Although "there is a dearth of case law on what degree of harm is neces-

sary to support a First Amendment violation," *Garber v. N.Y.C. Police Dep't*, No. 95 CIV 2516, 1997 WL 525396, at *5 (S.D.N.Y. Aug.22, 1997), *aff'd*, 159 F.3d 1346 (2d Cir.1998), there is no dispute that, as with a Title VII claim, a plaintiff's subjective feelings concerning his employer's actions are insufficient to establish the "adverse employment action" necessary to support a First Amendment retaliation claim. For example, the plaintiff in *Garber*, an Orthodox Jew employed by the New York City Police Department, wrote more than 700 letters over a nearly 25 year period complaining about the acts of various police officers. In 1995, the plaintiff was transferred from a job he "cherished" to another position with the same job description, job title, days and hours worked, salary and benefits. The plaintiff then commenced an action alleging both Title VII and First Amendment retaliation claims. In dismissing the plaintiff's First Amendment claim, Judge Keenan held that, "[w]ithout intending to minimize the strength of Plaintiff's feelings about the transfer, ... his purely subjective feelings about a transfer which, by objective standards, did not negatively alter the terms and conditions of his employment in any respect, does not rise to the level of a First Amendment violation." *Garber*, 1997 WL 525396, at *5. The Second Circuit affirmed. *See Garber v. N.Y.C. Police Dep't*, 159 F.3d 1346 (Table), 1998 WL 514222 (2d Cir. June 12, 1998). The higher court agreed that "a plaintiff's subjective percep-

---

Supreme Court's holding in *Swierkiewicz*, Plaintiffs' proposed Title VII claims might survive a motion to dismiss, as these claims "give [the City Defendants] fair notice of what [the Plaintiffs'] claims are and the grounds upon which they rest." 122 S.Ct. at 999. However, as the court held in *Stoner*, it is appropriate to deny Plaintiffs leave to amend, because Plaintiffs cannot state a *prima facie* case on the proposed claims, and thus, if leave to amend were granted, the claims

"would immediately be subject to dismissal on a motion for summary judgment." 2002 WL 523270, at *14 n. 10; *see also Health–Chem Corp.*, 915 F.2d at 810 (affirming district court's decision denying leave to amend complaint where facts demonstrated proposed amendments failed as a matter of law); *131 Maine St. Assocs.*, 179 F.Supp.2d at 345 n. 5 ("leave to amend will be denied if the proposed amended complaint could not survive a summary judgment motion").

tion that a demotion has occurred is not enough," and held that, although it did not intend to minimize the plaintiff's "unhappiness about the transfer, we cannot say that it rises to the level of a constitutional violation." *Id.* at *3. *See also Collins v. Christopher*, 48 F.Supp.2d 397, 410 (S.D.N.Y.1999) (Parker, J.) (plaintiff's allegations that her recommendations were not followed insufficient to establish adverse employment action); *Mishk v. Destefano*, 5 F.Supp.2d 194, 202 (S.D.N.Y.1998) (Parker, J.) (reorganization of plaintiff's unit in ways with which plaintiff disagreed insufficient to support First Amendment retaliation claim); *Bal v. Hughes*, No. 92 CIV 5453, 1998 WL 43129, at *5 (S.D.N.Y. Feb.2, 1998), *aff'd*, 166 F.3d 1199 (2d Cir. 1998) (requiring objective harm for retaliatory conduct to support First Amendment retaliation claim).

 Therefore, Proposed Claim 3—Plaintiffs' First Amendment retaliation claim—fails for the same reason Plaintiffs' Title VII claims fail: there has been no adverse employment action taken by the FDNY. Accordingly, adding Proposed Claim 3 would be futile, and leave to amend to add that claim is denied.

III. The Motion Should be Granted in Part *Vis-a-Vis the Establishment Clause Claim (Proposed Claim 4)*

In Proposed Claim 4, Plaintiffs allege that, as a result of the decision not to hire Imam Abdulmalik, the City Defendants violated the First Amendment's Establishment Clause. (*See* Pl. Mem. at 5.) The City Defendants oppose Plaintiffs' request to add this claim, arguing that the Islamic Society and its members, including James, do not have standing to assert an Establishment Clause violation, because the proposed Second Amended Complaint does not allege the requisite "distinct and palpa-

ble" injury resulting from the decision not to hire Imam Abdulmalik. (*See* Def. Mem. at 9–11.) The City Defendants are only partially correct.

 In order for either James or the Islamic Society to sue on behalf of the Islamic Society's members, it must be shown, *inter alia*, that the members of the Islamic Society would have standing to sue on their own. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342–43, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 46 n. 2 (2d Cir.2002). Thus, Plaintiffs must demonstrate that the members of the Islamic Society are "suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case . . . ." *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *accord Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir.1998). Plaintiffs argue that members of the Islamic Society have suffered an "injury" because they have been subjected to the "adverse employment action" discussed above. (Pl. Reply at 15.) However, because the Court has concluded that Plaintiffs failed to demonstrate that they suffered an "adverse employment action," their argument regarding the standing of the Islamic Society's members—based on the so-called "injury" resulting therefrom—necessarily fails. In other words, Plaintiffs' purely subjective feelings about the decision not to hire Imam Abdulmalik is insufficient to demonstrate that Plaintiffs have been "injured" such that they have standing to bring an Establishment Clause claim. Accordingly, neither the Islamic Society nor James has standing to sue on behalf of the Islamic Society's

members.[13] Leave to amend the complaint to allege an Establishment Clause claim on behalf of James or the Islamic Society's other members therefore must be denied.

■ However, it appears that the Islamic Society has standing to sue on its own behalf. The proposed Second Amended Complaint alleges that the decision not to hire Imam Abdulmalik, among other things, has (i) damaged the Islamic Society's ability to recruit new members, and (ii) caused a significant drain on the Islamic Society's resources. (*See* Proposed Sec. Am. Compl. ¶¶ 21–23.) These allegations, if proven, would demonstrate that the Islamic Society has suffered an "actual ... injury in fact that is fairly traceable to the alleged illegal action and [is] likely to be redressed by a favorable court decision." *Ragin v. Harry Macklowe Real Estate Co.,* 6 F.3d 898, 904 (2d Cir.1993) (internal quotation marks and citation omitted); *see also Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378–79 & n. 19, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (diversion of resources to counteract discriminatory efforts sufficient to establish plaintiff association's standing); *E. Paralyzed Veterans Ass'n, Inc. v. Lazarus–Burman Assocs.,* 133 F.Supp.2d 203, 211 (E.D.N.Y.2001) (same).

Of course, an issue remains as to whether the City Defendants's decision not to hire Imam Abdulmalik can properly be considered "illegal" such that an Establishment Clause claim may lie. *See Ragin,* 6 F.3d at 904. The City Defendants have not opposed the motion to amend on this ground, however, and, at this stage of the proceedings, the Court is reluctant to preclude the Islamic Society from at least *alleging* this claim. Indeed, if Plaintiffs are correct that, by hiring Dr. Adesanya, the City Defendants deviated from their prior practice of deferring to community religious leaders regarding the hiring of chaplains, then Plaintiffs may be able to state an Establishment Clause claim, for the City Defendants arguably might have "demonstrate[d] a preference" for some religions over Islam. *County of Allegheny v. ACLU Greater Pittsburgh Chapter,* 492 U.S. 573, 605, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989); *accord Larson v. Valente,* 456 U.S. 228, 244, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."); *Epperson v. Arkansas,* 393 U.S. 97, 103–04, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) ("Government in our democracy ... must be neutral in matters of religious theory, doctrine and practice. It may not be hostile to any religion or to the advocacy of nonreligion; and it may not aid, foster, or promote one religion or religious theory against another or even against the militant opposite."). As the Court intimated at oral argument, however, the City Defendants's prior practice of deferring to religious leaders in the community regarding the selection of chaplains may *itself* violate the Establishment Clause. *See Commack Self Serv. Kosher Meats, Inc. v. Weiss,* 294 F.3d 415, 428 (2d Cir.2002) (Establishment Clause violation found where, *inter alia,* state delegated authority to advisory board, comprised of six Orthodox Rabbis, to advise Department of Agriculture and Markets regarding kosher food laws; "By creating a regime in which there is a combined exercise of civic and religious authority, the challenged laws violate the fundamental principle underlying the Establishment Clause, which is 'to prevent, as far as possible, the intrusion of either [government or religion] into the precincts of the other.'") (quoting

---

**13.** For this same reason, James does not have standing to sue on his own behalf.

*Lemon v. Kurtzman,* 403 U.S. 602, 614, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)). These issues can be addressed, however, in a motion for summary judgment. For now, the Court will permit the amendment, as it cannot conclude on the current record that the Islamic Society's Establishment Clause claim should die on the vine.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend the complaint is granted only (i) to permit the Islamic Society to allege an Establishment Clause claim (proposed Claim 4) on its own behalf, and (ii) to permit Plaintiffs to allege "relevant pre-existing facts discovered by Plaintiffs subsequent to the filing of the Amended Complaint, including facts concerning the policies and practices of the [FDNY] for the appointment of chaplains." [14] In all other respects, Plaintiffs' motion is denied.

SO ORDERED.