Meda E. MORRISON, Plaintiff,

v.

**John E. POTTER, Postmaster General United States Postal Service, Defendant.**

**No. 03 CIV.6495(CM)(GAY).**

United States District Court, S.D. New York.

March 23, 2005.

Marc R. Lepelstat, New York, NY, and Waite P. Stuhl, Waite P. Stuhl, Esq., St. Louis, MO, for Plaintiff.

Heidi A. Wendel, New York, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT

MCMAHON, District Judge.

The undisputed facts demonstrate that Meda Morrison worked for the United States Postal Service from 1966 until she retired in 2002.[1] She worked in personnel services throughout her tenure, and was promoted in stages until she reached the position of Human Resources Specialist, grade level EAS–16. During a 1993 Postal Service reorganization, her position was downgraded to the EAS–15 level, but Morrison retained her EAS–16 grade level.

The events in suit occurred during the last two years of Morrison's employment, when she was 64–65 years old. She was stationed at the Westchester District office in White Plains, New York. Morrison's primary duty at the beginning of the year 2000 was the processing of retirements. Others in the position of Human Resources Specialist were responsible for implementing and administering employee compensation and benefits programs, pay procedures and rules, performing evaluations, handling retirements and insurance, and providing services related to safety and health, injury compensation and training.

After receiving numerous complaints about Morrison's failure to respond timely to requests for retirement counseling, to delay finishing retirement applications, and to treat prospective retirees in an appropriate manner, Barbara McKenna, Acting Director of Personnel, reassigned Morrison to different duties appropriate to a Human Resources Specialist. Effective January 13, 2001, her responsibilities were changed from processing retirements to processing career separations and other personnel duties. Aleta Rice, an African-American woman, assumed responsibility for processing retirements.

Morrison's grade level, pay, benefits and opportunities for promotion were unaffected by the change in her assigned duties. Morrison did lose her private office because she had ceased counseling employees. Employees providing personnel services in the White Plains office at Morrison's grade level worked in cubicles,

---

1. The retirement date is taken from the Join Pre-Trial Order. All the papers submitted in support of defendant's motion for summary judgment indicate that Morrison retired in January 2001, but since the record is replete with references to Meda's employment during 2001, that must be a repeated typographical error.

not private offices, except when their duties were such that they needed privacy for counseling clients.

In the Spring of 2000, Alice Newman, Manager of Human Resources for the Westchester District, reorganized personnel services in the Westchester District (which encompasses eleven counties north of New York City). In particular, she centralized all personnel services in White Plains (they had previously been performed in both White Plains and Newburgh). As a result of the centralization, Morrison was required to provide retirement services to employees in the northern counties of the Westchester District as well as the southern counties. This required Morrison to make day trips from White Plains to Poughkeepsie an average of once a month between May 2000 and January 2002, when she retired.

Morrison received a letter of reprimand in May 2000 after she failed to attend a seminar at which she was expected to make a presentation. Morrison claimed that she could not attend the seminar (which took place on a Saturday) because she was needed at home to care for disabled siblings.

**The Instant Complaint**

Morrison alleges that the Postal Service discriminated against her on the basis of her age and race by (1) issuing the written reprimand on May 12, 2000 after she failed to attend the seminar; (2) requiring her to provide retirement services to personnel in the northern part of the Westchester District, (3) requiring her to travel as part of her work, (4) subjecting her to allegedly unreasonable deadlines in the performance of her work, and (5) changing her job responsibilities as previously described.

She also alleges that these actions were taken against her in retaliation for her filing of EEO complaints going back to 1997, and including the complaints she filed after the reprimand issued and after her job responsibilities were changed.[2] Finally, Morrison contends that the above-mentioned actions gave rise to a hostile work environment.

The Government moves for summary judgment, asserting that nothing Morrison describes amounts to adverse employment action—a prerequisite for alleging employment discrimination or retaliation—or gives rise to a hostile work environment.

In her response to the Postal Service's motion for summary judgment, Morrison claims that management discriminated against her by denying her repeated requests for assistance when her workload increased as a result of the centralization of personnel functions in White Plains. She contends that management's racial animus is shown by their willingness to provide such assistance to a white employee, Ann Pantaline, one of Morrison's successors. According to the Government, no evidence supports these contentions, and the only evidence in the record contradicts Morrison's assertion that she asked repeatedly for assistance with her job.

**Standards for Summary Judgment**

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party

---

**2.** At the administrative level, no probable cause was found to believe that the Postal

Service discriminated against plaintiff.

against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.,* 870 F.2d 57, 60 (2d Cir. 1989).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Here, the Postmaster General is clearly entitled to summary judgment.

### 1. *Morrison Does Not Allege That Adverse Employment Action was Taken Against Her*

■ It is well settled that a plaintiff alleging employment discrimination or retaliation must demonstrate that she suffered an adverse employment action as part of her prima facie case. An adverse employment action is one that works a materially adverse change in the terms and conditions of employment. *Galabya v. New York City Bd. Of Education,* 202 F.3d 636, 640 (2d Cir.2000). To be materially

adverse, a change in working conditions must be more than merely inconvenient. Classic examples of "adverse employment action" include termination of employment or demotion indicated by diminution in wage, less distinguished title, material loss of benefits and significantly diminished material responsibilities.

■ Merely changing someone's job duties does not automatically qualify as an "adverse employment action." Prior to January 2001, Morrison counseled prospective retirees and prepared retirement applications. After her duties changed, she handled career separations, changes in employee status, bids by employees for vacant positions within the District, and various salary matters (military buy-backs and deposit/redeposits). All of these duties were within the position description for Human Resources Specialist. There is no evidence that these duties were inferior or less prestigious than her old duties. Under analogous circumstances, courts have repeatedly held that a change in duties—even from a job that the plaintiff "cherished"—does not constitute an adverse employment action. *See Castro v. New York City Bd. Of Education Personnel,* 96 Civ.6314, 1998 WL 108004, at *4 (S.D.N.Y. Mar.12, 1998); *Diaz v. Weill Medical Center of Cornell University,* 02 Civ. 7380, 2004 WL 285947, at *19 (S.D.N.Y. Feb 13, 2004); *Islamic Society of Fire Dept. Personnel v. City of New York,* 205 F.Supp.2d 75, 87 (E.D.N.Y.2002).

In *Galabya,* the Second Circuit held that in order to qualify as an adverse employment action, a change in responsibilities must be so unsuited to plaintiff's skills as to constitute "a setback to plaintiff's career." 202 F.3d at 641. Under that standard, the Court of Appeals affirmed dismissal of a teacher's claim that being assigned to teach classes outside his area of expertise constituted "adverse em-

ployment action." There is no evidence that Morrison's new duties were unsuited to her skills at all. They were among the duties normally assigned to an individual in her position, and they were consistent with her prior experience, which involved performing some of the very duties she was assigned in January 2001. Nor is there any evidence in the record that Morrison was deprived of any opportunity as a result of her reassignment to different duties.

■ Morrison alleges that being reassigned caused her embarrassment and humiliation. However, subjective feelings about a change in job duties do not transform a reassignment into an adverse employment action. *Reyes v. New York State Office of Children and Family Services,* 00 Civ. 7693, 2003 WL 21709407, at *9 (S.D.N.Y. Jul.22, 2003).

The only arguable "diminution" is that a person handling Morrison's old duties got a private office, while a person handling her new duties did not. But the loss of an office, without more, has never been held to be an adverse employment action. *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 465 (2d Cir.1997).

■ The reprimand delivered to Morrison after she failed to attend the seminar was also not an adverse employment action. "Although reprimands ... may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions." *Castro, supra,* 1998 WL 108004, at *7; *Henriquez v. Times Herald Record,* 97 Civ. 6176, 1997 WL 732444, at *6 (S.D.N.Y. Nov.25, 1997), *aff'd* 165 F.3d 14 (2d Cir.1998). In this case, the record is undisputed that the reprimand was ex-

punged after six months and was not followed by any disciplinary action, and there is no evidence tending to show that it had any effect on the terms or conditions of Morrison's employment. *See also Stembridge v. City of New York,* 88 F.Supp.2d 276, 283 (S.D.N.Y.2000).

■ Finally, denying plaintiff assistance with her workload (assuming arguendo that this happened—the record does not clearly support such an inference) does not rise to the level of an adverse employment action. Nor does being called into a supervisor's office to discuss work issues. "Although ... close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions." *Castro, supra,* 1998 WL 108004, at *7. Plaintiff has introduced no evidence that contradicts defendant's assertion that Postal Service workers were complaining about her performance—especially a lack of timeliness—and her attitude. An employer should be entitled to discuss and even critique employees about legitimate job performance problems without being subjected to suit. That is all that happened here.

Many of the Government's other arguments have merit—particularly its argument that there is no evidence in the record that would support an inference of discriminatory or retaliatory animus on the Postal Service's part[3]—but there is no need to discuss any of them at length. Because Morrison has failed to establish that she suffered any adverse employment action, she has not made out a prima facie case of either discrimination (whether based on age or race) or of retaliation. Morrison's First, Second and Fourth claims must, therefore, be dismissed.

---

**3.** Indeed, Morrison's claims add up to nothing more than, "I didn't like the way they treated me; I am an older person and I am an African–American; therefore I was dis-

criminated against because of age and race." The fallacy of this *post ergo propter hoc* reasoning is patent.

### 2. Morrison's Allegations Do Not Support a Claim of Hostile Work Environment

Morrison claims that the actions of which she complains constituted harassment that created a hostile and abusive work environment. Morrison's allegation abuses the legitimate objectives of the hostile work environment doctrine.

■ An employee is subjected to a hostile work environment when she alleges that she was the victim of conduct "severe and pervasive enough to create an environment that would reasonably be perceived, and is perceived, as hostile or abusive." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997). In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the United States Supreme Court limited hostile work environment liability to situations in which a plaintiff's workplace is permeated with "discriminatory intimidation, ridicule and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment."

■ Morrison has neither alleged nor adduced evidence tending to show that she was subjected to *any* intimidation, ridicule or insult, let alone severe and pervasive intimidation, ridicule or insult. Nor has she alleged that any derogatory comment or jokes about black people or older people were pervasive at the Postal Service, either among her supervisors or her coworkers. Morrison contends that her job duties and desk location were changed—with no accompanying diminution in her status, pay or job level—and that she was closely supervised, criticized, and on one occasion reprimanded, for reasons that the undisputed evidence demonstrates were related to her job performance. Morrison's complaints do not even remotely meet the standard necessary to maintain a hostile work environment claim. *Bennett v. Watson Wyatt & Co.*, 136 F.Supp.2d 236, 251–51 (S.D.N.Y.2001), *aff'd*, 51 Fed.Appx. 55 (2d Cir.2002).

Defendant's motion for summary judgment dismissing plaintiff's Third Cause of Action must, therefore, be granted.

### Conclusion

The defendant's motion for summary judgment is granted, and the Clerk of the Court is directed to enter judgment for defendant, dismissing the complaint, and to close the file. As this decision finally disposes of the action, if there are any undecided motions in the file, they should be marked "denied as moot" and removed from the court's pending motions list.